May it please the Court, Douglas Fee for Appellees County of Los Angeles, Sheriff Lee Baca, and other members of the Los Angeles Sheriff's Department. Good morning, Your Honors. Jeff Price appearing for Plaintiff Ruben Talamantes' appellant. All right. You may proceed. Thank you, Your Honor. You won't need to stand during his comment. You can sit down if you like. I didn't realize you were standing. We'll get you when we need you. Thank you. You can just watch him on the video there. All right. Your Honor, I would like to reserve five minutes for rebuttal, please. All right. In this case, the issue is the language of the statute. The statute in question is the Prison Litigation Reform Act, otherwise known as the PLRA 42 U.S.C. section 1997 small e. And it is the position of the appellant in this case that the language of the statute is clear and unambiguous, that it defines the meaning of the word In this case, the district court went beyond the language of the statute and, using policy arguments, made a decision that is completely unsupported by the clear and unambiguous language of the statute. At the time this action was filed, Mr. Talamantes was no longer a prisoner in any sense of the word. And, therefore, under the clear language of the statute, Mr. Talamantes had no obligation to follow any kind of administrative remedies offered by the Sheriff's Department. In any case, there is a subsidiary argument in the brief, and that is that Mr. Talamantes, through his father, attempted to actually seek remedies from the Sheriff's Department. But the Sheriff's Department actually did not follow their own rules. When Mr. Talamantes was interviewed by a lieutenant, the lieutenant did not provide him with the form that the Sheriff's Department's own rules required that he provide Mr. Talamantes with. If you're successful on the first issue, we won't need to get to the second issue, correct? Yes, Your Honor. Okay. And with that, I will yield the balance of my time to the appellee. All right. Thank you. Thank you. Thank you, Your Honors. Again, Douglas Speed. I will respond to Mr. Price's comments about the plain reading or natural meaning or however he might want to call it concerning the statutory language. I think that question has been answered by our Supreme Court in the Woodford case where they identified all of the policy reasons connected with the intent of Congress. But policy can't override the plain language of the statute, can it? Policy explains the language of the statute. Go ahead. Somebody go ahead. I'd like to entertain the question. All I'm saying is it explains that if it's ambiguous, if the language is plain and clear on its face, what explanation is needed? The language of the statute does not say currently confined. Well, that's an interesting comment. But at the beginning of the statute, if you look carefully, it says no action shall be brought. That's the time when you bring the action. Now, the bringing of the action took place after he was out of incarceration. I take it the word action has a clear meaning. I don't think it's defined by the statute, but it's certainly defined in the codes which were adopted by the Congress, and action is what you bring in court. So don't we look at the time he filed the action to see whether or not he's a prisoner confined? I don't think so, because an action can be filed by an inmate in custody or a post-custodial inmate. Certainly it can be filed while they're in custody, but if the action is filed when he's out of custody, he's no longer by a prisoner confined, and so the statute doesn't apply on its face. How can we change that by the policy that the Supreme Court's indicated that they want to be as careful as they can on these cases? I think if you – if one were to read carefully the message of Woodford, it would be that – Show me the language. I've read it carefully. All right. I have no doubt of that. You don't have it, but you want us to decide based on it. Let me try it this way, if I may. The language of the statute says by a prisoner confined. It does not say by a prisoner currently confined. The language of calling someone a prisoner or an inmate, for example, in our own custody manual, we refer to inmates also in the post-custodial sense, but we still call them inmates. And it may well be that Congress had the same idea in mind. Well, if they did, they should have said so. In other words, we can't really look at some internal prison manual. We just have to look at the language. And, you know, I don't know why there's such a big fight about it. I mean, the number of these pails in comparison to the large number that are filed by custodial prisoners, does it not? Well, that may be. On the other hand, I don't have any statistics at hand. And in my mind, it doesn't matter whether we're dealing with a lifer or a short-termer. Someone may spend a relatively short time in custody and then come out of custody and at that point may decide that the inmate wishes to file a lawsuit over the conditions of custody. What's the purpose of administrative exhaustion? There are a number of them. One is to give some incentive for those inmates who may be subjected to a grievance situation to engage with the administrative process, to allow a record to be made of the circumstances at the time, to provide the custodial institution with an opportunity to do something about it. And in that sense, I don't know. That doesn't quite work if you're already out. Yes, it does. And I'll tell you why. How? Because it gives the institution an incentive as well to correct itself. That's a larger value than the prisoner's suit. That doesn't seem to track well with a prisoner's suit. It's about a problem he's having. And administrative exhaustion might, if he's in custody, he might get a remedy, thereby, of course, avoiding any kind of a court suit, right? Well, I'm talking about something different, though. So you're you're you, but you keep talking about big policy, and we're talking about a real person and a statute. I'm talking about a real person, a real statute, and a real custodial institution. And in the sense that the institution deserves an opportunity under the doctrine of administrative exhaustion to correct errors or to deal with problems and find a solution, it can't do that if the exhaustion requirement is ignored. The exhaustion requirement provides an opportunity for the custodial officers to say, here's what's going on, do we need to do something here? Well, I can see your point. If the records show something that didn't happen and the person's outside, but they may get back inside again, and it could count against them. So clarification is important. It's important to have the prison being able to correct their own mistakes, et cetera. I understand those issues, and they're persuasive. The difficulty I have is whether the Congress provided for doing that. It's a good idea if they had done it. And if they had said by a prisoner at any time confined, I would have absolutely no problem with this case. The difficulty is they didn't say that. They said by a prisoner confined. And I'm having problem understanding how we can read that language and still affirm the district court. I think that to read it as a prisoner currently confined as opposed to a prisoner in any other temporal sense of confinement, then one would have to insert language that is not there. And if in that sense there's an ambiguity, then we do have to look at the intent of Congress. And I think the question is, where is the ambiguity in prisoner confined? It has to be brought by a prisoner, correct? Yes. A prisoner confined in a jail, prison, or other correctional facility. Well, that's the question. And I apologize to the Court because this is not something that we have briefed or argued about or it's not something that's been raised by counsel, so I'm addressing it as a bit of an emergent situation here. The question would be whether the language after the word prisoner refers to an immediate condition or a descriptive condition that has no temporal limitation. It could be interpreted either way. That results in an ambiguity. It could be reasonably interpreted either way. And if that is the case, we must look to the intent of Congress, as was done in Woodford. The other circuits that addressed this, albeit before Woodford, seemed to think that there was no ambiguity in the language. So we would be creating a circuit split if we were to go your way, wouldn't we? Well, I don't know about that. I would say this, that ---- Well, would it be a circuit split if we go ó every other circuit that looked at it, unfortunately, went against the way you want us to go, right? Every other circuit that went the other way did not have the teaching of the Woodford decision and did not address the particular issues that are being addressed in this discussion today. Okay. Fair enough. All right. I would just like to say that if the result which appellant seeks were permitted, that this would allow a complete bypass of the administrative regulations and the exhaustion doctrine. And it would really disregard all of the values that have been expressed, acknowledged, and sanctified in the Woodford decision. And that's a very real problem about what are we going to do here? Is this going to help our institutions that engage in the custodial task? Is it going to carry out the will of Congress? And do we just basically give everyone an escape valve who wants it? They just ignore the administrative requirements, get out, and say, ha-ha, that doesn't apply to me. That's a problem that we really need to confront. I'm about out of time if there are no further questions. Thank you very much. Thank you. Do we have any rebuttal? Your Honor, I have three comments. Number one, the last comment by appellee strains credulity. First of all, the Los Angeles County Sheriff's Department really doesn't even have an administrative structure to remedy violations. Secondly, I would like to say that the suggestion that the other circuits have not been absolutely not true. All of the other circuits have been. You may have misunderstood him. He said the other circuits didn't have the basis of the reasoning in a cited decision. That's all he said. In Woodford. But Woodford does not impact this decision in a way that would make the decisions of the other circuits any different from the decision that is facing this court. And lastly, I would actually like to point out that I would like to point out the reason why the appellee's argument is absolutely and clearly untenable, and that is in the very grammatical structure of the statute. If you look at the definition of prisoner and you look in the clause that follows where it says detained in any facility and you go on and it says who is accused of convicted of sentenced for or adjudicated delinquent. The construction advocated by appellee cannot work because if someone had been acquitted of a criminal charge and was then released from prison or jail, then they would not be under this statute because they would not be accused of convicted of sentenced for or adjudicated. So that just completely undercuts the argument made by the appellee, and that is why their argument is meritless and the statute is completely unambiguous and the district court should be reversed. Thank you. Counsel, don't run away yet. There's one question I want to raise with you. We have had difficulties in the past with deliberate bypasses in our various areas that we deal with these, with prisoners and former prisoners. It strikes me that with a person who is sentenced to a short term, they could do a deliberate bypass. They could consciously say, I will wait until I get out and file a lawsuit. Should we be concerned about that? Congress should be concerned about that, Your Honor. Okay. Would you thank Judge Morrow for lending us you for a few minutes this morning? It is extremely helpful, and I know you're in a very large trial there, and we appreciate the cooperation of our district judges in helping us to take care of our calendars, too. So please thank her on her behalf. Absolutely, Your Honor. Thank you for allowing me to appear here in this way. Well, I think it's helpful. I don't know how it will come out. I don't think it's fair to say that the L.A. County's argument is meritless because it has some merit, and counsel here has put it out pretty well. Both of you have. So we appreciate arguments from both counsel this morning. The case just argued, Talamantes v. Lea, is submitted.
judges: Wallace, Farris, McKeown